SANDER v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. March 8, 1901.)

EASEMENT—RIGHT OF RAILROAD COMPANY OVER STREET—RIGHT BY PRESCRIPTION—CHANGE FROM SURFACE TO ELEVATED RAILROAD NOT WARRANTED.

Plaintiff, through conveyance from P., the original owner, acquired title to land abutting on Fourth avenue, including the fee to the center of the avenue. Subsequent to the execution of this deed, P. conveyed the fee in Fourth avenue, except that conveyed to plaintiff's grantor, to the city in trust for its use as a street. By a later deed P. conveyed the title to a strip 24 feet wide in the middle of the avenue to the defendant, to be used only for the construction of a railroad, and by an agreement entered into with the city the defendant was authorized to con-

struct and operate a railroad on such avenue. The defendant thereafter constructed a surface railroad on the avenue, and maintained the same for about 60 years, when it began to elevate the railroad; and plaintiff brought an action to restrain such construction and recover damages therefor. *Held*, that defendant, as against plaintiff, under the color of title of its deed and its long user of the property, had only acquired a right to operate a surface railroad, as authorized by its agreement with the city and by its grant from P.; and hence it was error for the court not to allow a recovery for the use of the street included in the strip 24 feet wide in the center of the street.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by Frederick W. Sander against the New York & Harlem Railroad Company and another, to restrain the construction of defendants' elevated railroad and to recover damages therefor. From a judgment awarding the damages, restraining the construction in part, both parties appeal. Reversed.

See 59 N. Y. Supp. 127.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, and INGRAHAM, JJ.

James C. Bushby, for plaintiff.
Ira A. Place, for defendants.

INGRAHAM, J. This action was brought to restrain the defendants from occupying with their elevated railroad structure certain portions of Fourth avenue in front of the plaintiff's premises on the northwest corner of 116th street and Park avenue, and to recover the damages caused thereby. It would appear that prior to the year 1826 one Peter Poillon was the owner of a tract of land which included the plaintiff's property, the fee of Fourth avenue, and the land on the opposite sides thereof. Fourth avenue had been laid out as a public street by the commission appointed under chapter 115 of the Laws of 1807, who, on the 1st of April, 1812, had filed a map upon which this avenue appears. Poillon conveyed to one Vought by deed dated June 21, 1827, recorded April 8, 1828, certain lots abutting on Fourth avenue, including the premises now owned by the plaintiff, which deed included the fee to the center of the avenue laid out as Fourth avenue upon the map of the city. There was produced from the records of the mayor, aldermen, and commonalty of the city of New York a deed, dated July 24, 1827, by which Poillon conveyed to the mayor, aldermen, and commonalty of the city of New York certain streets and avenues in said city, which included all that part of Fourth avenue opposite to and adjacent to the premises owned by the plaintiff in this action. This deed was "in trust that the same be left open as public streets for the use and benefit of the inhabitants of the said city, forever." The defendants then produced a conveyance, dated the 18th day of January, 1832, whereby Poillon, in consideration of the sum of one dollar, granted to the New York & Harlem Railroad Company a strip of land, being a part of Fourth avenue laid out on the map of the city of New York, by the following description:

"All that certain piece of land situate, lying, and being in the Twelfth ward of the city of New York, being part of one of the avenues laid out on the map of

the city of New York as the 'Fourth Avenue,' and included within a space of 24 feet wide, running through the center of said avenue, and between 115th street and 121st street, and is bounded and described as follows, viz.: Northerly by land belonging to the estate of Samson Benson, deceased; southerly by the old road leading from Harlem to Harlem Lane and McGown's Pass; east and west by lines drawn parallel to the center line of the Fourth avenue, on each side thereof, at the distance of twelve feet therefrom. To have and to hold the said premises and messuage above mentioned, with the appurtenances, unto the said parties of the second part, and their successors, from the day of the date thereof, for and during the full period of time during which the said parties of the second part may remain an incorporated company, and on which they are to construct their railroad, and for no other purpose, with the power of sloping their embankments or excavations so much further beyond the lines of said premises hereinbefore granted as may be necessary to support their work,—not, however, extending beyond the width of the avenue."

This instrument was recorded on August 18, 1835. At the time of the execution of this deed Poillon had conveyed to the plaintiff's grantor the property now owned by the plaintiff, which included the westerly half of Fourth avenue to the center line thereof. He had conveyed to the city of New York the part of Fourth avenue in front of the premises in question not already vested in the plaintiff's grantor. He then conveyed to the defendant a strip of land in the center of the avenue 24 feet in width, on which the defendant was to construct its railroad, and for no other purpose. This conveyance to the defendant was ineffectual to convey any property in the avenue to the defendant, as the grantor had parted with his title to the avenue by prior conveyances.

On the 9th of January, 1832, before the execution of this grant to the defendant, articles of agreement were entered into between the New York & Harlem Railroad Company and the mayor, aldermen, and commonalty of the city of New York, which recited an ordinance of the common council of the city of New York, approved by the mayor on the 22d of December, 1831, by which the said railroad company was permitted to construct and lay down a double or single track or railway on Fourth avenue from Twenty-Third street to the Harlem river, and which ordinance further provided that if, at any time after the construction of the aforesaid railways by the said New York & Harlem Railroad Company, it should appear to the mayor, aldermen, and commonalty of the city of New York that the said railways, or any part thereof, shall constitute an obstruction or impediment to the future regulation of the city, or the ordinary use of any street or avenue (of which the said mayor, aldermen, and commonalty shall be the sole judges), the said railroad company or the directors thereof shall, on the requisition of the said mayor, aldermen, and commonalty, forthwith provide a remedy for the same satisfactory to the said mayor, aldermen, and commonalty, or, if they fail to find such remedy, they shall within one month after such requisition proceed to remove such railway or obstruction or impediment, and to replace the street or avenue in as good condition as it was before the said railway was laid down. And the agreement provided that in pursuance of the requirements of the eighth section of said ordinance, "the said parties of the first part [the New York & Harlem Railroad Company] do here-

by, for themselves and their successors, promise, covenant, and agree to and with the said parties of the second part [the city of New York], and their successors and assigns, to stand, abide by, and perform all the conditions and requirements in the said ordinance contained." In pursuance of this resolution the railroad company constructed its road, which at this point appears to have been upon the original surface of the land, requiring no excavation or embankment, and the road as thus constructed continued in operation without substantial change in grade until about 1874.

In considering the question as to what right, if any, the New York & Harlem Railroad Company acquired by this conveyance, we find certain principles have been established by decisions of the court of appeals and of this court. It was held in Lewis v. Railroad Co., 162 N. Y. 218, 56 N. E. 545: That the entry and occupation by the company must be deemed to have been under and in subordination to the legal title of the city. That, "if the occupation begins with the recognition of the real owner's estate, it is presumed to be subservient, and that the one making the entry intends to hold honestly, and not tortiously. The character of the possession depends on the intention with which entry is made and occupation continued. There is no disseisin until there is occupation with intention to claim title, and the fact of entry and the quo animo fix the character of the possession." That under such circumstances the New York & Harlem Railroad Company acquired no title, as against the city, by its entry upon and occupation of any portion of Fourth avenue. That the acceptance of a deed from the former owner of the property was no evidence of a hostile claim, but simply that it had acquired the reserved rights of the grantor. In an action affecting this use of Fourth avenue in the case of Fries v. This Defendant (decided Feb. 8, 1901; not yet officially reported) 68 N. Y. Supp. 670, this court held that as the defendant's deed recited a nominal consideration only, was without covenants, and referred to the land granted as a part of the avenue, the grantee was not a purchaser for a valuable consideration, so as to be entitled to the benefit of the recording act.

Whatever right the New York & Harlem Railroad Company acquired by this deed, under the principles laid down in these cases it is quite clear that it was subject to the grant to the plaintiff and to the city of New York. It could, however, acquire by prescription, as against the plaintiff, the right to operate its railway as constructed and operated in the avenue prior to 1893. As, however, the grant was of a parcel of land which had been conveyed to the city in trust to hold the same as a public street, and the grant to the defendant limited the use to which the defendant could put the land conveyed, the company could acquire by prescription, as against an abutting owner, only the right to use the property for such purpose and in such manner as it was actually used, which was as authorized by the agreement with the city and as contemplated by the grant of Poillon to the defendant. There is nothing to show that the defendant ever made any claim to the fee of the bed of Fourth avenue, except to use it as allowed by these instruments. As the defendant could acquire no title to the property as against the city, and as the

plaintiff had as appurtenant to his property an easement in Fourth avenue which accrued to him by virtue of the establishment of the public avenue, it seems to me that all that the defendant could acquire by prescription was the right to maintain and operate its railroad, as it could legally do under its agreement with the city, and as under that agreement it actually did maintain and operate it. This is a necessary deduction from the decision in the Lewis Case, supra.

The defendant's road was originally built upon the surface of the ground, and so continued for about 20 years, when the tracks were depressed, and the roadbed was in a trench about 20 feet below the surface. When the trains passed in this trench, they were out of sight, and did not interfere with the plaintiff's easement in the avenue. There was no vibration, and this cut was crossed by a bridge at 116th street, which extended the whole width of the street. The evidence also shows that the bed of the present structure is 14 feet 2 inches above the surface of the street; that the track is 16 feet 6 inches above the surface of the street; that the south of the structure is 21 feet 7 inches above the surface of the street; that it is a serious impairment of the plaintiff's right of air, access, and light; that this structure was completed and trains commenced to run thereon in the year 1897; that upon this structure there pass about 480 trains a day, the height of the cars being about 15 feet, and the rate of speed at which these trains run being 20 to 25 miles an hour. It is quite apparent that the New York & Harlem Railroad Company never acquired any right to use this avenue, either by prescription or deed, other than a right to operate a steam railroad upon the surface or in the cut or depression in which the road was operated prior to 1897; and nothing has given to this defendant the right to operate or maintain such a structure as is here described, which materially interferes with the plaintiff's right to use Fourth avenue in front of his premises. It appears, therefore, that the learned trial judge was wrong in holding that the plaintiff was not entitled to recover for the use of the street included within the 24 feet in the center thereof, and for that reason, upon the plaintiff's appeal, the judgment must be reversed.

What we have said disposes of the defendants' appeal upon the merits, and upon that appeal the judgment must be affirmed. As there must be a new trial, there is no necessity to discuss the exceptions to rulings on evidence.

The judgment is therefore reversed upon the plaintiff's appeal, and a new trial ordered, with costs to plaintiff to abide the result; and upon the defendants' appeal the judgment is affirmed, with costs.

RUMSEY and HATCH, JJ., concur.

VAN BRUNT, P. J. (dissenting). I think that a clear case of title by adverse possession, as to the 24-foot strip, at least, was established by the evidence in this case. I therefore dissent.